<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VIOLET MARLEY,<br><br>                 Plaintiff,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>                 Defendant. | Case No. 2:21-cv-14280 (BRM) (AME)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

      Before the Court is Defendant PricewaterhouseCoopers, LLP's ("PwC") Motion to Compel Arbitration or, in the alternative, to Dismiss the Complaint pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). Plaintiff Violet Marley ("Plaintiff") filed an opposition to the Motion (ECF No. 15), and PwC filed a reply (ECF No. 16). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Motion to Compel Arbitration is **GRANTED**.

    **I.**      **BACKGROUND**

        **A.**    **Underlying Facts and Allegations**

      This action involves numerous employment-related discrimination claims stemming from Plaintiff's termination from PwC. (*See generally* Compl. (ECF No. 1).) However, the merits of

Plaintiff's claims are not before the Court. Instead, the Court is called upon solely to evaluate the enforceability of an arbitration agreement.

Plaintiff was hired by PwC in October 2012 where she was employed for more than seven years. (*Id.* ¶¶ 18, 51.) In March 2014, PwC entered into an arbitration agreement (the "Arbitration Agreement" or the "Agreement") with all its employees. (PwC's Mot. Br., Spencer Decl. (ECF No. 6-2) ¶ 3.) PwC alleges it sent the Arbitration Agreement to Plaintiff via email and first-class mail on March 31, 2014. (ECF No. 6-2 ¶ 4; PwC's Mot. Br., Bertino Decl. (ECF No. 6-5) ¶ 6.)

The Arbitration Agreement expressly mandated arbitration for "all disputes, controversies, and claims relating to or arising out of [Plaintiff's] . . . employment with [PwC], or [her] separation from such employment." (PwC Mot. Br., Ex. A, Arbitration Agreement (ECF No. 6-3) at 2 of 6.) The Arbitration Agreement explicitly stated Plaintiff's signature was not required for acceptance: "**By continuing your employment with [PwC] on or after the Effective Date [July 1, 2014], you will be deemed to have accepted this Agreement, and you and [PwC] will be bound by its terms.**" (*Id.*) The body of the email and the letter attached to the email contained language conveying the same. (PwC's Mot. Br., Ex. B (ECF No. 6-4).) The Arbitration Agreement also set forth the type of claims covered therein, including those made under the ADA, ADEA, FMLA, "state and local laws concerning discrimination and retaliation . . . and any other claims arising under any federal, state or local ordinance." (ECF No. 6-3 at 2–3 of 6.) Plaintiff was terminated from PwC in February 2020 at the age of fifty-four. (ECF No. 1 ¶ 51.)

**B.      Procedural History**

On July 29, 2021, Plaintiff filed her Complaint, alleging violations of the following: Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.* ("ADEA"); New Jersey Law Against Discrimination,

N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD"); and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). (ECF No. 1.) On October 4, 2021, PwC moved to compel arbitration per the terms of the Arbitration Agreement. (ECF No. 6.) On November 1, 2021, Plaintiff opposed, claiming no knowledge of ever having received or consented to the Arbitration Agreement. (ECF No. 15.) On November 8, 2021, PwC replied in support of its Motion. (ECF No. 16.)

## II. LEGAL STANDARD

"Because arbitration is a matter of contract, before compelling arbitration pursuant to the [FAA], a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Madlinger v. Midland Credit Mgmt.*, Civ. A. No. 19-21183, 2020 WL 7640918, at *2 (D.N.J. Dec. 23, 2020) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

In doing so, courts may apply either the Rule 12(b)(6) motion to dismiss standard or the Rule 56(a) summary judgment standard. *Singh v. Uber Tech. Inc.*, 939 F.3d 210, 217–18 (3d Cir. 2019) ("[T]he two options [for reviewing a motion to compel arbitration] are the motion to dismiss standard under Rule 12(b)(6) and the summary judgment standard under Rule 56."). The key factor in determining which standard to apply is "whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Id.* (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774–76 (3d Cir. 2013). Determining which standard to apply is crucial because the two standards differ significantly.

Under the motion to dismiss standard, a "defendant need only shoulder a single burden—to show that the complaint fails to state a claim." *Guidotti*, 716 F.3d at 772 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC,* 832 F. Supp. 2d 474, 479 (E. D. Pa. 2011)). To

3

defeat this motion, the opposing party "can rely only on the complaint and selected other documents." *Id.* at 773 (quoting *Somerset*, 832 F. Supp. 2d at 479).

Alternatively, under the summary judgment standard "the moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case." *Id.* If the burden is met, then "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (citation and quotation marks omitted). To defeat a summary judgment motion, the opposing party "has significantly more material at his disposal than when opposing a motion to dismiss, given that he may cite evidence gained during discovery." *Id.*

### III. DECISION

Plaintiff advances two primary arguments in opposition to PwC's Motion. First, she argues the summary judgment standard should apply and, relatedly, she should be entitled to discovery. (ECF No. 15 at 3.) Second, Plaintiff asserts a valid arbitration agreement has not been made under the first prong of the FAA standard for reviewing motions to compel arbitration. (*Id.* at 4–5.) Plaintiff contends: (1) under governing New Jersey law, PwC failed to carry its burden of establishing she affirmatively and explicitly agreed to arbitration (*id.* at 4); and (2) she never manifested the unmistakable intent to be bound by the Agreement (*id.* at 5). Notably, Plaintiff does not dispute the second prong of the motion to compel arbitration analysis—if the Agreement is valid, her claims would fall within the scope of the Agreement. The Court addresses Plaintiff's arguments in turn.

### A. The motion to dismiss standard applies and Plaintiff is not entitled to discovery.

PwC argues the motion to dismiss standard should apply and, therefore, the Court can only consider the Complaint, documents attached thereto or referenced therein, and "an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (ECF No. 6-1 at 5 n.6 (citing *Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc.*, Civ. A. No. 09-0868, 2009 WL 3234589, at *2 (D.N.J. Sept. 28, 2009); *Clemons v. Midland Credit Mgmt., Inc.*, Civ. A. No. 18-16883, 2019 WL 3336421, at *4 n.1 (D.N.J. July 25, 2019)).) Plaintiff contends the summary judgment standard should apply, thereby affording her the opportunity for discovery. (ECF No. 15 at 3 (relying on, among other cases, *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).) However, Plaintiff's reliance on *Par-Knit Mills* is unavailing.

In *Par-Knit Mills*, the Third Circuit held application of the summary judgment standard to a motion to compel arbitration is "appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." 636 F.2d at 54 n.9. Yet the Court in *Par-Knit Mills* also held "[a] naked assertion . . . by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue the making of the arbitration agreement" when "on the face of the pleadings, it appears that it did." *Id.* at 55 (internal quotations omitted). On the other hand, "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits, . . . in most cases should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds." *Id.* (internal quotations and citation omitted).

Here, Plaintiff maintains she has "no recollection of receiving, by mail, any correspondence regarding notice of the Agreement," and she "never affirmatively expressed [her] intent, in any

5

manner whatsoever, to be bound by the terms of the Agreement." (Pl.'s Opp'n, Marley Decl., (ECF No. 15-2) ¶¶ 6, 14.) Even so, the Court finds Plaintiff's failure to recall receiving the Agreement is not akin to an unequivocal denial the Agreement had been made. *See, e.g.*, *Gomez v. Rent-A-Center, Inc.*, Civ. A. No. 18-1528, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018) (granting the defendant's motion to compel arbitration in part because, "[w]ith respect to contractual disputes, federal courts have consistently held that a party's failure to recall a relevant event is insufficient to raise an issue as to the occurrence of that event"). Moreover, Plaintiff's bald claim that she never intended to be bound by the Agreement, without more, is a naked assertion. Accordingly, the Court applies the motion to dismiss standard and denies Plaintiff's request for discovery.

### B. A valid arbitration agreement existed.

#### 1. Under New Jersey law, Plaintiff has failed to rebut the presumption that she received the Arbitration Agreement.

Plaintiff argues, under controlling New Jersey law, PwC failed to satisfy its burden of establishing she affirmatively and explicitly accepted the Agreement. (ECF No. 15 at 4–5.) PwC counters New York law applies and, in any event, it met its burden by properly posting the Agreement through the mail. (ECF No. 6-1 at 2–7.) The Court finds PwC's argument persuasive.

Assuming *arguendo* New Jersey law applies, "New Jersey cases have recognized a presumption that mail properly addressed, stamped, and posted was received by the party to whom it was addressed." *SSI Med. Servs., Inc. v. State Dep't Hum. Servs., Div. of Med. Assistance & Health Servs.*, 685 A.2d 1, 4 (N.J. 1996).[1] "In the absence of any administrative rule or regulation

---

[1] New York law holds the same. *See Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985) ("New York law holds that when, as here, there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received.")

6

to the contrary, the traditional preponderance of the evidence standard applies to administrative agency matters." *Id.* at 5.

Here, PwC produced evidence a declaration from Ronald Bertino, a former Partner at Heffler Claims Group ("Heffler"). (ECF No. 6-5 ¶ 2.) Heffler was employed by PwC to "provide printing, mailing, and other services in connection with the distribution of arbitration agreements to current PwC employees." (*Id.* ¶ 3.) Prior to sending out the agreements, Heffler "sent the names and addresses of all the PwC [e]mployees, including Plaintiff, through the U.S. Postal Service ("USPS") National Change of Address ("NCOA") database to request updated mailing addresses and to standardize the addresses in accordance with postal standards." (*Id.* ¶ 5.) Plaintiff's mailing address had not been updated with a new address according to the NCOA database. (*Id.*) On March 31, 2014, Heffler mailed the Arbitration Agreement "via first-class mail, with adequate postage to . . . Plaintiff [at her listed home address]." (*Id.* ¶ 6.) Once mailed, "Plaintiff's envelope was not returned by USPS as not deliverable." (*Id.* ¶ 7.)

However, "[t]he presumption of receipt derived from proof of mailing is 'rebuttable and may be overcome by evidence that the notice was never in fact received.'" *SSI Med. Servs., Inc.*, 685 A.2d at 6 (collecting cases). Yet "mere denial of receipt does not rebut that presumption. There must be-in addition to denial of receipt-some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Woodward v. Pressler and Pressler, LLP*, Civ. A. No. 10-1325, 2014 WL 809003, at *9 (D.N.J. Feb. 28, 2014) (quoting *Meckel*, 758 F.2d at 817). Here, Plaintiff has not provided any evidence she did not receive notice, nor has she even denied receiving the mail. Instead, she claims to have "no recollection" of receiving the mail. Thus, under the traditional preponderance standard, the

7

evidence in this case supports finding that PwC properly mailed the Arbitration Agreement to Plaintiff and that the mailing raised a presumption of receipt.

### 2. Plaintiff manifested assent to the Arbitration Agreement by continuing to work at PwC through the Effective Date.

Having established Plaintiff failed to rebut the presumption that she received the Arbitration Agreement, and therefore, was on notice of its terms, the Court next considers Plaintiff's argument she never manifested assent to the Agreement.

As discussed, the Arbitration Agreement contained a provision explaining that Plaintiff's signature was not required for acceptance: "**By continuing your employment with [PwC] on or after the Effective Date [July 1, 2014], you will be deemed to have accepted this Agreement, and you and [PwC] will be bound by its terms.**" (ECF No. 6-3 at 2 of 6.) Plaintiff continued to work at PwC for approximately five and a half years after the effective date of the Arbitration Agreement.

Plaintiff relies on *Leodori v. Cigna Corp.*, to assert "[a] valid waiver [to an arbitration provision] results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." 814 A.2d 1098, 1105 (N.J. 2003). However, PwC cites numerous cases holding continued employment is sufficient consideration to support an arbitration provision. *See, e.g., Quigley v. KPMG Peat Marwick LLP*, 749 A.2d 405 (N.J. Super. Ct. App. Div. 2000) (finding continued employment deemed sufficient consideration for employee's compliance with employer's demands, including arbitration); *see also Jaworski v. Ernst & Young, U.S. LLP*, 119 A.3d 939, 946 (N.J. Super. Ct. App. Div. 2015) (finding employee manifested assent to employer's arbitration program by continuing to work following its implementation).

In *Leodori*, the court also held "[w]hen one party . . . presents a contract for signature to another party, the omission of that other party's signature is a significant factor in determining

whether the two parties mutually have reached an agreement." *Id.* A.3d at 1106. However, here Plaintiff's signature was not required for acceptance; per the Agreement, her continued work indicated her assent.

Plaintiff's reliance on *Skuse v. Pfizer, Inc.* is equally misplaced. 236 A.3d 939 (N.J. 2020). As PwC notes, in *Skuse,* the court affirmed the employer-defendant's arbitration provision, which "unambiguously explained that an employee's continued employment after the arbitration policy's effective date would be deemed to constitute his or her assent to the arbitration policy." 236 A.3d at 950. Given Plaintiff was on notice of the Arbitration Agreement, and PwC unambiguously explained that Plaintiff's continued employment would constitute assent to the Agreement, the Court finds Plaintiff manifested the requisite assent.

## IV.   CONCLUSION

For the reasons set forth above, PwC's Motion to Compel Arbitration is **GRANTED,** and the Court stays the action pending the conclusion of such arbitration. An appropriate order follows.


Dated: February 18, 2022               */s/ Brian R. Martinotti*
                                   **HON. BRIAN R. MARTINOTTI**
                                   **UNITED STATES DISTRICT JUDGE**